2004 OK CIV APP 42

**Peggy HADDOCK, Plaintiff/Appellant,**

v.

**WOODLAND PARK HOME, INC., Defendant/Appellee.**

No. 98,874.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 16, 2004.

Laurence L. Pinkerton, Judith A. Finn, Pinkerton & Finn, P.C., Tulsa, OK, For Plaintiff/Appellant.

Jody R. Nathan, Paul F. Prather, Feldman, Franden, Woodard, Farris & Boudreaux, Tulsa, OK, For Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Plaintiff/Appellant Peggy Haddock appeals from the trial court's order granting in part her application for litigation costs and denying her application for attorney fees. Following a jury trial, Haddock sought costs, pre-judgment interest, and attorney fees from Defendant/Appellee Woodland Park Home, Inc. ("Woodland Park") based on Haddock's contention that the damages award was greater than the counteroffer of judgment she made before trial. The trial court found that Woodland Park had previously paid the pre-judgment interest. The trial court awarded costs to Haddock, but found that the offer of judgment was invalid, as was Haddock's counteroffer of judgment, and the court denied Haddock's quest for counsel fees. We affirm.

¶ 2 The facts of this case are not disputed. Haddock and her husband, Plaintiff Randall Haddock, filed suit against Woodland Park after Haddock was injured in an auto accident involving a car driven by one of Woodland Park's employees. Haddock sought damages for personal injuries and her husband made a claim for loss of consortium.

¶ 3 Woodland Park filed its Offer of Judgment July 22, 2002, in which it offered "to confess judgment in favor of Plaintiffs, Peggy Haddock and Randall Haddock, in the amount of $85,000.... This offer must be accepted by both Peggy Haddock and Randall Haddock in order to be enforceable."

¶ 4 Haddock and her husband filed a Counteroffer of Judgment July 29, 2002. That document provides that "Plaintiff, without conceding the validity of the Offer of Judgment of the Defendant ..., or waiving their right to object to it, submit the following counteroffers ..." The Counteroffer then provided that Haddock counteroffered $353,000, her husband counteroffered $20,000 and together they counteroffered $373,000.

¶ 5 Haddock and her husband then filed on October 15, 2002 a Motion to Strike Offer of Judgment. They contended that Woodland Park's Offer of Judgment did not comply with 12 O.S. § 1101.1 because it made one offer to both plaintiffs and did not afford them the opportunity to accept or reject the offer individually. Haddock and her husband asked that the offer be stricken, or in the alternative, that they be allowed to comment on the offer at trial.

¶ 6 Woodland Park filed its Objection to Motion to Strike October 17, 2002. Woodland Park argued that its Offer of Judgment was proper under § 1101.1, and also argued that Haddock's Motion to Strike was untimely where Haddock had previously submitted a Counteroffer of Judgment. Woodland Park also argued that § 1101.1(C) expressly provides that evidence of offers or counteroffers of judgment is not admissible except in actions to enforce settlement agreement or to determine reasonable attorney fees and costs.

¶ 7 Jury trial was held October 21–24, 2002. The journal entry of judgment was filed November 13, 2002, which provided that the jury found in favor of Haddock and awarded her $350,000 in damages. The jury found in favor of Woodland Park on the husband's claim for loss of consortium. The court entered judgment in favor of Haddock for $350,000 plus pre-judgment interest, costs and post-judgment interest as prescribed by law.

¶ 8 Haddock filed her Application for Pre-judgment Interest, Attorney Fees, and Costs November 13, 2002. Haddock sought $148,229.41 in pre-judgment interest. Haddock asserted that the damages award and pre-judgment interest totaled $498,229.41, which exceeded the Offer of Judgment made by Woodland Park. Haddock asserted that because Woodland Park did not accept Haddock's Counteroffer of Judgment and because Haddock received a judgment for more than the amount of her counteroffer (after adding pre-judgment interest), then she was entitled to attorney fees incurred from the date of the counteroffer to the date of the verdict, plus costs.[1] Haddock requested

1. The Oklahoma Court of Civil Appeals has held

that pre-judgment interest may be added to a

$12,043.09 in costs and $28,525 in attorney fees. Haddock later supplemented her application for costs seeking an additional $750.

¶ 9 Woodland Park filed its Objection to the application for attorney fees November 25, 2002. Woodland Park asserted, as had Haddock in her Motion to Strike Offer of Judgment, that § 1101.1 provides that *any defendant* may file an offer of judgment for a sum certain to *any plaintiff*. Woodland Park asserted that based on Haddock's Motion to Strike, the trial court had ruled before trial that the Offer of Judgment was ineffective because it was made jointly to both plaintiffs.[2] Woodland Park argued that because its Offer of Judgment was invalid, Haddock's Counteroffer of Judgment was likewise invalid, because there was no valid offer to counter, and that Haddock was therefore not entitled to attorney fees. Woodland Park also argued that if the court had not ruled that the offer and counteroffer were ineffective, Woodland Park would be entitled to an award of fees from Randall Haddock, who did not prevail and necessarily received less than his counteroffer of judgment.[3] Woodland Park also argued that the costs requested were unreasonable and unsupported by the record. Woodland Park lastly asserted that on November 22, 2002 it had delivered to Haddock's counsel a check for $499,891.10, representing the damages award plus pre-and post-judgment interest. Woodland Park asked that the court deny Haddock's request for attorney fees and costs.

¶ 10 Woodland Park filed its Motion to Tax Costs December 2, 2002. Woodland Park asserted that it was the prevailing party as to Randall Haddock and was therefore entitled to an award of costs pursuant to 12 O.S. § 929. Woodland Park asked for an award of $6,697.59 as costs.

¶ 11 Haddock filed her "Second Supplemental Application Costs" December 16, 2002, in which she sought $29,218.27. Many of the costs itemized in the second supplement were similar, but not identical, to those amounts itemized in the original application for costs and first supplement. To this, Haddock added a request for $17,738.76 for expert witness expenses.

¶ 12 The trial court issued its final order on Haddock's applications for pre-judgment interest, attorney fees and costs, and on Woodland Park's motion for costs January 17, 2003. The trial court denied Haddock's application for attorney fees under 12 O.S. § 1101.1. The trial court itemized the costs it granted to Haddock, totaling $4,059.56. The trial court awarded Woodland Park the cost of the deposition of Randall Haddock, in the amount of $205. The trial court denied all other costs requests. The court found that pre-judgment interest previously had been paid. It is from this order that Haddock appeals.

¶ 13 Haddock first argues that the trial court erred in ruling that Woodland Park's Offer of Judgment was invalid because it offered one sum to both plaintiffs, without apportionment. Haddock has failed to acknowledge that this is the exact argument she made in support of her Motion to Strike the Offer of Judgment. Haddock in essence appeals from the trial court's decision to do exactly as Haddock requested it to do. Nevertheless, we find the trial court correctly denied Haddock's application for attorney fees.

verdict to determine the amount of judgment before comparing the amount of judgment to the amount of a rejected counteroffer, for purposes of awarding or not awarding attorney fees under § 1101.1. *Morava v. Central Oklahoma Medical Group, Inc.*, 2001 OK CIV APP 84, 26 P.3d 779, 784 (cert.denied); *Lawson v. National Steel Erectors Corp.*, 2000 OK CIV APP 69, ¶ 37, 8 P.3d 171, 179 (cert.denied).

2. Nothing in the record documents that the trial court made this decision before trial. But as will be discussed, the court's order denying Haddock's application for attorney fees effectively granted her Motion to Strike the Offer of Judgment. And, in her Petition in Error and Brief, Haddock also asserts that the trial court ruled before trial that Woodland Park's offer of judgment was invalid.

3. Woodland Park additionally asserted 1) that Haddock's application for fees was deficient because it failed to distinguish between fees incurred on behalf of Haddock and those incurred pursuing her husband's claim; and 2) the hourly rate requested was unreasonably high for a personal injury case.

■ ¶ 14 The Offer of Judgment by Woodland Park provided one judgment amount directed to both plaintiffs and expressly required the plaintiffs to accept the judgment together. Such an offer of judgment is invalid. Section 1101.1 provides that any defendant may make an offer of judgment as to any plaintiff. No published Oklahoma case has ruled whether the use of the singular in the statute requires that an offer be made to each plaintiff singly. The following holdings from the Florida Supreme Court and Court of Appeals are illustrative:

> Generally, an offeror must apportion an offer of settlement among offerees, whether the offerees are plaintiffs or defendants. See, e.g., *Allstate Indem. Co. v. Hingson*, 808 So.2d 197, 199 (Fla.2002) (holding that the old rule required an offer to multiple plaintiffs to be apportioned among the plaintiffs, even without the specificity requirement that was added to the rule in 1997); *Dudley v. McCormick*, 799 So.2d 436, 441 (Fla. 1st DCA 2001) (holding that Rule 1.442 requires that a joint offer made by a single defendant to two separate plaintiffs must specify the amount to go to each plaintiff); *McFarland & Son, Inc. v. Basel*, 727 So.2d 266, 270 (Fla. 5th DCA 1999) ("[A] general offer to a group of defendants without assigning each defendant a specific amount must be held to lack the particularity required by the rule."); *Ford Motor Co. v. Meyers ex rel. Meyers*, 771 So.2d 1202, 1204 (Fla. 4th DCA 2000) (holding that a general offer made to two defendants was deficient even though there was an indemnification agreement between the two defendants);.... This specificity requirement, applied even prior to the amendment to Rule 1.442, allows each party to evaluate the offer independently. See *C & S Chem., Inc. v. McDougald*, 754 So.2d 795, 797–98 n. 3 (Fla. 2d DCA 2000).

*Hilyer Sod, Inc. v. Willis Shaw Exp., Inc.*, 817 So.2d 1050, 1052 (Fla.App.2002). In *Hilyer*, the court noted that the Florida statute had been amended to require apportionment of offers of judgment between multiple plaintiffs. The court noted that if a single offer of judgment was made to multiple plaintiffs, the trial court would then be in the difficult position of determining whether either plaintiff qualified for an award of attorney fees based on the trial court's own apportionment of the settlement offer among the plaintiffs. *Id.* citing *Allstate Indem. Co. v. Hingson*, 808 So.2d 197, 199 (Fla.2002).

¶ 15 Other courts have reached the same conclusion on this issue. In *Weeks v. City of Colorado Springs*, 928 P.2d 1346, 1351 (Colo. App.1996), a case involving derivative claims of parents for injuries to their child, the Colorado Court of Appeals held that an offer of settlement made to multiple plaintiffs must apportion the settlement amount among the plaintiffs and allow each plaintiff to decide independently whether to settle. Otherwise, an individual plaintiff cannot independently weigh the risks and benefits of the offer against the judgment that may be obtained for that plaintiff. *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071 (7th Cir.1999), held that a joint offer of judgment to multiple plaintiffs is impossible for plaintiffs to evaluate or compare to their likely recovery at trial and therefore is invalid to trigger the costs and attorney fees provision of Rule 68, Federal Rules of Civil Procedure, which is comparable to § 1101.1. The court in *Gavoni* noted that if a joint offer to multiple plaintiffs was allowed to trigger the costs rule, then courts would be faced with litigation over the proper allocation of the costs order between various plaintiffs who may have sought different amounts of damages. *Lintz v. American General Finance, Inc.*, 76 F.Supp.2d 1200 (D.Kan.1999) relied on *Gavoni* to reach the same result.

¶ 16 Haddock argues that her husband's claim for loss of consortium was derivative of her claim for personal injuries and therefore Woodland Park's Offer of Judgment to both plaintiffs together was valid. Haddock relies on *Deocampo v. Ahn*, 101 Cal.App.4th 758, 125 Cal.Rptr.2d 79 (2 Dist.,2002) which held that spousal plaintiffs could make a joint offer of settlement to a single defendant. *Wiese v. Dedhia*, 354 N.J.Super. 256, 806 A.2d 826 (A.D.2002) also held that a joint offer from spousal plaintiffs to an individual defendant was valid, where the offer of judgment statute referred to an offer from any *party* to any other *party*. These cases are

distinguishable from the instant case at a minimum in that they involved an offer made by two plaintiffs to a single defendant. Additionally, those cases allowed an offer of settlement to be made by plaintiffs to defendants.

¶ 17 The Oklahoma offer of judgment statute, § 1101.1, does not allow a plaintiff to initiate an offer of settlement to a defendant. And, the Oklahoma statute uses the singular "any defendant" and "any plaintiff." Most importantly though, we agree with the cases which find that an unapportioned offer to multiple plaintiffs prevents each plaintiff from evaluating the settlement offer against the value of his or her claim and would lead to confusion in apportioning the various plaintiffs's responsibility for the attorney fees award after a judgment for less than the settlement offer. Even though the loss of consortium claim was derivative of Haddock's claim, it is still unclear from Woodland Park's offer of judgment which portion of the offer was directed to Haddock and which portion to her husband. Clarity requires separate offers to each plaintiff (or to "any plaintiff" as the statute provides). We find no error in the implicit finding that Woodland Park's Offer of Judgment, containing one amount to be accepted jointly by both plaintiffs, was invalid under § 1101.1.

¶ 18 Haddock next argues that the trial court erred in determining that her Counteroffer of Judgment was invalid. As noted above, § 1101.1 does not contain a provision for a plaintiff initiating an offer of judgment. Without a valid offer from Woodland Park, Haddock's "counteroffer" was at best an offer of judgment, which is not embraced by § 1101.1. We conclude that the trial court correctly determined that Haddock's counteroffer was invalid because Woodland Park's offer was invalid.

AFFIRMED.

ADAMS, J., and JONES, J., concur.